IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM R. WEINSTEIN, individually and on behalf of the People of the United States of America,<br><br>   *Plaintiff Pro Se*,<br><br>   v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>   *Defendants*. | No. 17 Civ. 1018 (RA)<br>[rel. No. 17 Civ. 458 (RA)] |

**DEFENDANT PRESIDENT DONALD J. TRUMP'S
MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) AND (b)(6)**

**INTRODUCTION**

  Plaintiff brings this putative class action *pro se* against the President of the United States, in his official capacity, and three private individuals, seeking the creation of an equitable constructive trust for the benefit of the American people of certain funds received by the President's businesses. Plaintiff alleges that he and the American people are the intended third party beneficiaries of a pledge made by the President before taking office to donate all profits from foreign governments' patronage of his hotels and similar businesses during his Presidency to the United States Treasury. Plaintiff seeks an equitable accounting of such profits by a special master as well as an order requiring prompt payments of such profits pursuant to the Miscellaneous Receipts Act, 31 U.S.C. § 3302.

  This Court has no jurisdiction over Plaintiff's claims. Plaintiff has not alleged an injury in fact to support his standing to invoke this Court's Article III jurisdiction. In seeking relief on behalf of the American people regarding the President's pledged donations—which Plaintiff

asserts "belong in good conscience to the People," 2d Am. Compl. ¶ 74, ECF No. 19—the complaint alleges at most "generalized grievances, seeking relief that no more benefits the plaintiff than it does the public at large." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1555 (2016). Nor has Plaintiff identified any waiver of sovereign immunity that would permit this suit against the President to proceed. Moreover, there is simply no "case or controversy" for the Court's adjudication because the three-count complaint does not allege that the President has violated any statutory or constitutional provision. Finally, Plaintiff has failed to state a claim upon which relief can be granted because the requested equitable remedies do not substitute for causes of action.

## BACKGROUND

Plaintiff William R. Weinstein is a resident of New York. He brings this case *pro se* on behalf of the American people seeking to enforce a pledge the President made before taking office concerning the management of his financial affairs. 2d Am. Compl. ¶ 1. The President and his attorneys had announced in a January 11, 2017 press conference that the President would convey his illiquid business assets to a trust, to be managed by his adult sons and a Trump Organization executive, and that he would resign from all official positions he held with The Trump Organization entities. *See id*. ¶¶ 9–15 and n.1 (citing full transcript and video of the press conference); *see also* Ex. 1 (Morgan, Lewis & Bockius LLP, White Paper: *Conflicts of Interest and the President* [hereinafter "White Paper"]). Among other measures to be implemented to avoid the appearance of conflicts of interest, the President also pledged to "donate all profits from foreign governments' patronage of his hotels and similar businesses during his presidential term to the U.S. Treasury." White Paper at 6. The President's counsel noted that "[t]his way, it is the American people who will profit." 2d Am. Compl. ¶ 14.

Plaintiff states that "the goal of [this] lawsuit is to provide a mechanism and appropriate procedures" to enforce the President's pledge and to ensure that the donations are made in compliance with applicable law and in accordance with "the express purpose of President Trump's charitable promise and agreement" to benefit the American people. *Id*. ¶ 63. To that

2

end, Plaintiff requests three related equitable remedies against the President as well as against the three individuals he believed to be the trustees of the trust discussed in the January 11, 2017 press conference: (1) creation of an equitable constructive trust over any foreign government profits received by the President for the benefit of the American public; (2) an equitable accounting of these profits, to be administered by a special master appointed under Federal Rule of Civil Procedure 53; and (3) an order to pay these profits to the U.S. Treasury. *Id.* ¶ 64.

Plaintiff contends that he and the American people are entitled to the requested relief because they are the "intended third-party beneficiaries" of the foreign government-derived profits pledged by President Trump and "have an enforceable property interest in these profits." *Id.* ¶ 73. Plaintiff further alleges that the requested relief is necessary because The Trump Organization's policy—"Donation of Profits from Foreign Government Patronage Policy"—announced on May 11, 2017 to effectuate the President's pledge is allegedly deficient in a number of respects. *Id.* ¶¶ 36–45. Among other things, Plaintiff criticizes the length of time that The Trump Organization plans to take to transfer foreign government-derived profits to the Treasury, alleging that the failure to do so within three days of receipt would constitute a violation of the Miscellaneous Receipts Act, 31 U.S.C. § 3302. *Id.* ¶¶ 57–60.

The complaint does not allege any violation of law by the President, beyond offering Plaintiff's observation that the President has been "subjected to many criticisms about conflicts of interest" and that "issues have been raised whether certain moneys received by President Trump on account of these business holdings violate [the Foreign and Domestic Emoluments Clauses of the Constitution]." *Id.* ¶¶ 6–7. The Foreign Emoluments Clause, in particular, provides that "no Person holding any Office of Profit or Trust under [the United States], shall, without the Consent of the Congress, accept of any present, Emolument, Office, or Title, of any kind whatever, from any King, Prince, or foreign State." U.S. Const. art. I, § 9, cl. 8. Plaintiff observes that the President's voluntary "promise and agreement" to donate all profits from foreign governments has obviated "the issue of 'the Consent of the Congress' or the need for any specific Congressional action under the Foreign Emoluments Clause." 2d Am. Compl. ¶ 15.

3

# ARGUMENT

## I. THIS COURT LACKS JURISDICTION TO ADJUDICATE PLAINTIFF'S CLAIM.

A district court may properly dismiss a complaint under Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Plaintiff "has the burden of proving by a preponderance of the evidence that [jurisdiction] exists." *Id.* Notably, although courts generally construe *pro se* complaints liberally, no such "special consideration" is accorded a *pro se* plaintiff who is a licensed attorney, as is the case here.[1] *Harbulak v. Suffolk Cty.*, 654 F.2d 194, 198 (2d Cir. 1981); *see also Gundlach v. IBM Japan, Ltd.*, 983 F. Supp. 2d 389, 393 (S.D.N.Y. 2013), *aff'd by Gundlach v. Int'l Bus. Machs., Inc.*, 594 F. App'x 8 (2d Cir. 2014).

### A. Plaintiff Has Not Alleged An Injury In Fact.

Plaintiff lacks standing to bring this suit. As the party invoking federal jurisdiction, Plaintiff bears the burden of demonstrating the three elements that constitute the "irreducible constitutional minimum of standing," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)—namely, that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547. "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975)). Plaintiff's assertion of standing fails at the first prong.

To establish injury in fact, "a plaintiff must show that he or she has suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 1548 (quoting *Lujan*, 504 U.S. at 560). Specifically, the injury must affect the plaintiff in "a personal and individual way" and must be "real" not "abstract." *Id*. This requirement is not satisfied when a complaint "claim[s] only harm to [the

---

[1] *See* Attorney Detail, *New York State Unified Court System*, https://iapps.courts.state.ny.us/attorney/AttorneyDetails?attorneyId=5432669.

4

plaintiff's] and every citizen's interest in proper application of the Constitution and laws, and seek[s] relief that no more directly and tangibly benefits him than it does the public at large." *Lujan*, 504 U.S. at 573–74.  Moreover, the requirement of a personal, particularized injury ensures that "the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982).

Here, Plaintiff has not alleged sufficient facts to establish that he has suffered an invasion of a legally protected interest that is concrete and particularized.  Plaintiff's interest in the President's pledge to donate foreign government-derived profits to the U.S. Treasury for the duration of his Presidency—including their accounting and speed of delivery—is at most a matter held in common with the public at large.  Plaintiff concedes as much, as he alleges that the suit is on behalf of the "more than 300 million" American people, *see* 2d Am. Compl. ¶ 4, that "[t]hese profits belong in good conscience to the [American] People," *id.* ¶ 74, and that the same remedy from the Court "would provide relief to each and all of the People," *id.* ¶ 70.  This makes clear that Plaintiff alleges only "generalized grievances, seeking relief that no more benefits the plaintiff than it does the public at large," *Spokeo*, 136 S. Ct. at 1555, and that is insufficient to establish injury in fact for purposes of Article III standing.  *See, e.g.*, *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 212, 217 (1974) (no standing where the asserted injury reflected "only the generalized interest of all citizens in constitutional governance"); *Ex parte Levitt*, 302 U.S. 633, 633 (1937) (no standing where the plaintiff had "merely a general interest common to all members of the public").  *Cf. Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 600 (2007) (an interest over the "moneys of the federal treasury" is "too indeterminable, remote, uncertain and indirect to furnish a basis for an appeal to the preventive powers of the Court") (quoting *Doremus v. Bd. of Ed. of Hawthorne*, 342 U.S. 429, 433 (1952)); *see also Commonwealth of Mass. v. Mellon*, 262 U.S. 447, 487 (1923).  For these reasons, Plaintiff has not established injury in fact and thus lacks standing.

### B. Plaintiff's Claim Against the President is Barred by Sovereign Immunity.

This Court also lacks jurisdiction because Plaintiff has not identified a waiver of sovereign immunity for his official-capacity suit against the President. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Sovereign immunity also protects federal officials when they are sued in their official capacities. *Dotson v. Griesa*, 398 F.3d 156, 177 (2d Cir. 2005); *Sprecher v. Graber*, 716 F.2d 968, 975 (2d Cir. 1983).

Here, Plaintiff cites the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, as a basis for his claim, but that statute does not waive sovereign immunity. *Serra v. GSA*, 667 F. Supp. 1042, 1051 n.4 (S.D.N.Y. 1987). Rather, "[i]ts operation is procedural only—to provide a form of relief previously unavailable." *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937); *see also Nike, Inc. v. Already, LLC*, 663 F.3d 89, 95 (2d Cir. 2011) ("The Declaratory Judgment Act does not expand the subject matter jurisdiction of the federal courts."), *aff'd by* 568 U.S. 85 (2013). Section 702 of the Administrative Procedure Act ("APA"), which waives sovereign immunity for declaratory and injunctive suits against "an agency or an officer or employee thereof," 5 U.S.C. § 702, is similarly unavailing because "[t]he President is not an agency within the meaning of the APA." *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003); *see also Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992). Finally, the Miscellaneous Receipts Act does not provide a basis for the Court's jurisdiction because the Act does not waive sovereign immunity.

Nor do Plaintiff's allegations fall within the so-called *Larson-Dugan* exception to sovereign immunity, *see Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 701–02 (1949); *Dugan v. Rank*, 372 U.S. 609, 622 (1963), which permits a suit "seek[ing] to prevent an official of the United States from acting in excess of his statutory authority, from exercising his

6

statutory authority in an unconstitutional manner, or from exercising statutory authority which is itself unconstitutional." *Liffiton v. Keuker*, 850 F.2d 73, 78 (2d Cir. 1988); *see also Dotson*, 398 F.3d at 177.  The complaint does not allege that the President "has acted unconstitutionally or beyond his statutory power." *Larson*, 337 U.S. at 691 n.11.  And even if it did, the Supreme Court has explained that the exception is still inapplicable if "the relief requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign," *id.*, which is the relief demanded here.  Among other things, Plaintiff is seeking an order requiring the President to donate more foreign government-derived profits to the United States Treasury than may be planned by The Trump Organization.  *See* 2d Am. Compl. ¶ 42.  For these reasons, Plaintiff's suit against the President is barred by sovereign immunity.

## II.   PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Plaintiff also has failed to state a claim upon which relief can be granted.  To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  This means that the complaint must contain factual allegations that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  It is not enough that the allegations are "consistent with" or show a "sheer possibility" of liability.  *Iqbal*, 556 U.S. at 678.

As noted above, Plaintiff has not alleged any statutory or constitutional violation by the President.  The complaint's three counts only seek remedies, which are not causes of action.  *See* 2d Am. Compl. ¶¶ 71–84.  *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010) ("Declaratory judgments and injunctions are remedies, not causes of action."); *cf. In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d at 731 ("[A] request for relief in the form of a declaratory

judgment does not by itself establish a case or controversy involving an adjudication of rights."). The complaint simply has not alleged any claim, let alone one upon which relief can be granted.

Even if the Court were to construe the complaint as raising some sort of contract claim in light of Plaintiff's assertion that he and the American people have a "property interest" as "the intended third party beneficiaries" of the President's pledge, *see* 2d Am. Compl. ¶ 73, such a claim would still fail.  Plaintiff has alleged no facts supporting any of the necessary elements of contract formation, including whether there is any consideration supporting any such alleged contract.  *E.g.*, Restatement (Second) of Contracts § 17 (1981) ("the formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration").  He has alleged no enforceable agreement at all because "statements of principle and intent in the political realm . . . are not enforceable promises under contract law." *Berg v. Obama*, 574 F. Supp. 2d 509, 529 (E.D. Pa. 2008), *aff'd*, 586 F.3d 234 (3d Cir. 2009).  "Indeed, our political system could not function if every political message articulated by a campaign could be characterized as a legally binding contract enforceable by individual voters."  *Id.*

To the extent the complaint can be construed to raise a claim under the Miscellaneous Receipts Act, 31 U.S.C. § 3302, on the theory that the donation policy announced by The Trump Organization allegedly does not comply with the timing requirement of the Act, *see* 2d Am. Compl. ¶¶ 57–60, that claim would fail as well.  The Act governs "official[s] or agent[s] of the United States Government having custody or possession of public money."  *Id.*  "Public money" has been construed to mean "revenues of the United States."  *Coudert v. United States*, 175 U.S. 178, 182 (1899); *see also Am. Fed'n of Gov't Emps., AFL-CIO, Local 1647 v. Fed. Labor Relations Auth.*, 388 F.3d 405, 408–09 (3d Cir. 2004).  The pledged donations here cannot reasonably be characterized as "public money" because the President is not legally bound to give them and they are not yet in the U.S. Treasury.  As Plaintiff acknowledges, the pledged donations are merely "unconditional gifts to the United States," which will be treated as such "[w]hen made."  *See* 2d Am. Compl. ¶ 16.

Finally, the Second Amended Complaint does not raise any claim under the Emoluments Clauses of the Constitution or contain any allegations that would support such a claim. Even if the Court were to construe the complaint otherwise, a claim under either Clause would fail for reasons set forth at length in the Government's motion to dismiss the related case of *CREW v. Trump*, No. 17 Civ. 458 (RA) (S.D.N.Y.), ECF No. 34. *See* Mem. in Support of Mot. to Dismiss, ECF No. 35 at 26–47. Similarly, the requested relief to remedy any such supposed Emoluments Clause violation—*i.e.*, the creation of an equitable constructive trust to be administered by a special master—would also be barred by *Mississippi v. Johnson*, 71 U.S. 475, 500–01 (1866), as discussed in the Government's motion to dismiss in *Crew*. ECF No. 35 at 48–50.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the Second Amended Complaint for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted.

Dated: July 7, 2017                             Respectfully submitted,

                                                CHAD A. READLER
                                                Acting Assistant Attorney General

                                                JENNIFER D. RICKETTS
                                                Director, Federal Programs Branch

                                                ANTHONY J. COPPOLINO
                                                Deputy Director

                                                /s/ *Jean Lin*
                                                JEAN LIN
                                                JAMES R. POWERS
                                                U.S. Department of Justice
                                                Civil Division, Federal Programs Branch
                                                20 Massachusetts Ave. NW
                                                Washington, DC  20530
                                                Phone: (202) 514-3716
                                                Fax: (202) 616-8202
                                                Email: jean.lin@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on July 7, 2017, I electronically filed a copy of the foregoing. Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

                                            /s/ *Jean Lin*
                                            JEAN LIN