UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

WILLIAM R. WEINSTEIN, individually and on                 :
behalf of the People of the United States of America,     :          No. 17-cv-1018-GBD
                                                          :          [rel. No. 17-cv-458-GBD]
                                    Plaintiff Pro Se,      :
                                                          :
            -vs.-                                          :
                                                          :
DONALD J. TRUMP, in his official capacity as              :
President of the United States of America, and            :
DONALD J. TRUMP, JR., ERIC TRUMP and                      :
ALLEN WEISSELBERG, as Trustees of a                       :
publicly described but not publicly named Trust,          :
                                                          :
                                    Defendants.           :

-----------------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS THE SECOND
AMENDED CLASS ACTION COMPLAINT**


William R. Weinstein
LAW OFFICES OF
WILLIAM R. WEINSTEIN
199 Main Street, 4th Floor
White Plains, New York 10601
(914) 997-2205
wrw@wweinsteinlaw.com

PLAINTIFF PRO SE AND ATTORNEY
FOR THE PEOPLE OF THE UNITED
STATES OF AMERICA


Dated: September 1, 2017

# TABLE OF CONTENTS

*Page*

I.     PRELIMINARY STATEMENT AND SUMMARY OF RELEVANT FACTS ...............1

II.    PLAINTIFF HAS STANDING TO ASSERT HIS EQUITABLE CLAIMS,
       AND THE COURT HAS JURISDICTION OVER THOSE CLAIMS.............................7

       A.     Plaintiff Satisfies The *Spokeo* Requirements For Standing, And The
              Other Cases Cited By Defendants Are Inapplicable.................................................7

       B.     The Court Has Jurisdiction Over Plaintiff's Claims ...............................................10

III.   PRESIDENT TRUMP'S SOVEREIGN IMMUNITY ARGUMENT IS
       MERITLESS.................................................................................................................12

IV.    THE MRA APPLIES TO THE TRUSTEES, AND CONFIRMS THE NEED
       FOR THE IMPOSITION OF THE EQUITABLE RELIEF SOUGHT BY
       PLAINTIFF...................................................................................................................13

V.     PLAINTIFF'S COMPLAINT READILY SURVIVES DEFENDANTS'
       MOTIONS TO DISMISS UNDER RULE 12(b)(6).......................................................15

VI.    CONCLUSION.............................................................................................................17

# TABLE OF AUTHORITIES

*Page*

**CASES:**

*Am. Fed'n of Gov't Emps., AFL-CIO, Local 1647 v. Fed. Labor Relations Auth.*,
    388 F.3d 405 (3d Cir. 2004)............................................................................... 14-15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).......................................................................................... 15

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).......................................................................................... 15

*Brown v. Fletcher*,
    235 U.S. 589 (1915)................................................................................... 5, 16, 17

*Chiste v. Hotels.com L.P.*,
    756 F. Supp. 2d 382 (S.D.N.Y. 2010)................................................................. 17

*Coudert v. United States*,
    175 U.S. 178 (1899).......................................................................................... 14

*Dairy Queen, Inc. v. Wood*,
    369 U.S. 469 (1962)........................................................................................... 6

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
    545 U.S. 308 (2005).......................................................................................... 11

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002)...................................................................................... 5, 17

*Hein v. Freedom From Religion Found., Inc.*,
    551 U.S. 587 (2007)........................................................................................... 9

*Kirby v. Lake Shore & Mich. S. R.R.*,
    120 U.S. 130 (1887)................................................................................. 6, 11, 17

*Mississippi v. Johnson*,
    71 U.S. 475 (1866)........................................................................................... 17

*Pub. Interest Research Group of N.J., Inc. v. Powell Duffryn Terminals, Inc.*,
    913 F.2d 64 (3d Cir. 1990)................................................................................ 15

*Schlesinger v. Reservists Comm. to Stop the War,*
    418 U.S. 208 (1974) ................................................................................................ 9

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016) ..................................................................................... 7, 8

*Thomas v. Network Solutions, Inc.*
    176 F.3d 500 (D.C. Cir. 1999) .......................................................................... 14

*Zavolta v. Lord, Abbett & Co., LLC,* No. 2:08-cv-4546,
    2010 WL 686546 (D.N.J. Feb. 24, 2010) ......................................................... 8

## CONSTITUTION, STATUTES & RULES:

U.S. Const., Article I, Section 6, Clause 2, Ineligibility Clause ...................................... 9

U.S. Const., Article I, Section 9, Clause 8, Foreign Emoluments Clause ........................... *passim*

28 U.S.C. § 1331 ............................................................................................................ 11

28 U.S.C. § 1332(d), Class Action Fairness Act of 2005 ............................... 6-7, 10, 12

28 U.S.C. § 2201-2202, Declaratory Judgment Act .................................................... 12

31 U.S.C. § 3302, Miscellaneous Receipts Act ..................................................... 13, 15

31 U.S.C. § 3302(c)(1) ............................................................................................. 13, 15

Fed. R. Civ. P. 12(b)(1) ............................................................................................. 1, 18

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 1 15, 17, 18

## OTHER AUTHORITIES:

Federal Judicial Center: Jurisdiction--Equity ......................................................... 1-2

Plaintiff Pro Se William R. Weinstein ("Plaintiff"), individually and on behalf of the

People of the United States of America, respectfully submits his memorandum of law in

opposition to the motion of defendant President Donald J. Trump ("President Trump") (Dkt. No.

22), and the motion of defendants Donald J. Trump, Jr., Eric Trump and Allen Weisselberg, as

Trustees ("the Trustees") of a publicly described but not publicly named trust ("the Trust") (Dkt.

No. 24) (the Trustees and President Trump, collectively, referred to as "Defendants"), seeking to

dismiss Plaintiff's June 2, 2017 Second Amended Class Action Complaint ("Complaint") (Dkt.

No. 19) under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[1]

## I.      PRELIMINARY STATEMENT AND SUMMARY OF RELEVANT FACTS

The judicial Power under Article III of the United States Constitution "shall extend to all

Cases, in Law *and Equity*, arising under this Constitution, the Laws of the United States, [and] to

Controversies … between Citizens of different States" (emphasis added). Although Defendants

assiduously avoid the basis for Plaintiff's Complaint in their motions, this case is brought under

the Article III *equitable* judicial Power, because it involves monies held and to be held in trust

and seeks quintessential equitable relief, including the imposition of a constructive trust on, and

an accounting of, those monies (Complaint ¶¶ 71-77 and 78-82, respectively)—as well as an

equitable injunction requiring the Trustees to pay over those monies within their control to the

U.S. Treasury in a timely fashion once properly accounted for (Complaint ¶¶ 82-84).

The Federal Judicial Center describes the equity jurisdiction of the federal courts in

relevant part, as follows:

> The federal courts' equity jurisdiction, rather than encompassing certain types of
> suits, pertained to situations that could arise in virtually any sort of litigation. As
> Alexander Hamilton explained in *Federalist*, no. 80, "there is hardly a subject of

---

[1] President Trump's brief in support of his motion (Dkt. No. 23) is denoted "Trump Br. __." The Trustees' brief in support of their motion (Dkt. No. 25), which substantially piggy-backs onto President Trump's brief without separate, independent analysis, is denoted "Trustees Br. __."

litigation between individuals, which may not involve those ingredients of *fraud, accident, trust, or hardship,* which would render the matter an object of equitable rather than of legal jurisdiction." Hamilton elaborated in *Federalist,* no. 83, that "the great and primary use of a court of equity is to give relief in extraordinary cases, which are exceptions to general rules." Supreme Court Justice Joseph Story, who authored *Commentaries on Equity Jurisprudence* in 1836, echoed Hamilton, writing that "cases must occur to which the antecedent rules cannot be applied without injustice, or to which they cannot be applied at all."[2] (emphasis in original)

The Federal Judicial Center further states that "federal courts sitting in equity [are empowered] to provide relief in exceptional cases by, for example … adjudicating disputes relating to trusts not within the scope of the common law." *Id.*

It is beyond dispute that this case and the facts under which it arises are exceptional, extraordinary and unprecedented, and relate to a trust not within the scope of the common law. There is no case in American history (at least so far as Plaintiff is aware) involving the creation of a private trust to hold the assets of a vast economic empire owned by a U.S. President— including the foreign government profits earned by those assets—where the trust agreement includes an express or implied term requiring the charitable payment by the trustees from the trust of "all profits from foreign governments' patronage of [the president's] hotels and similar businesses during his presidential term to the U.S. Treasury," "to avoid even the appearance of a" potential violation of the Foreign Emoluments Clause (U.S. Const., Article I, § 9, Clause 8 (quoted Complaint ¶ 7)), and "to do more than what the Constitution requires," so that "it is the American people who will profit." But that is precisely what has happened here, as confirmed by documentary evidence and other public statements by President Trump's own counsel (e.g., Complaint ¶¶ 11, 13, 14, 16-18, 20, 25, 30, 63; Complaint Ex. 1 ("White Paper")).

The essential facts alleged by Plaintiff can be synthesized as follows:

---

[2] *See* https://www.fjc.gov/history/courts/jurisdiction-equity. Chief Justice Roberts chairs the Federal Judicial Center's Board, which also includes the director of the Administrative Office of the U.S. Courts and seven judges elected by the Judicial Conference. https://www.fjc.gov/about**.**

(i)  As of January 11, 2017, the Trust had been created under a trust agreement ("Trust Agreement") into which some of the assets of The Trump Organization ("TTO") already had been transferred, and the remainder would be transferred (Complaint ¶ 11, White Paper at 2-3). However, the identity of the Trust continues to remain unclear (Complaint ¶¶ 19-23), and the actual Trust Agreement has never been publicly disclosed (Complaint ¶¶ 33-36).[3]

(ii)  The assets of the Trust, and of TTO insofar as they have not yet been transferred to the Trust, necessarily include "all profits from foreign governments' patronage of [President Trump's] hotels and similar businesses during his presidential term" (Complaint ¶¶ 11, 24, White Paper at 2)).

(iii)  The Trust Agreement and other relevant documents either expressly or impliedly address these profits, which are to be paid to the U.S. Treasury in furtherance of President Trump's promise and agreement that he "will donate all [those] profits … to the U.S. Treasury" "to avoid even the appearance of a" potential violation of the Foreign Emoluments Clause and "to do more than what the Constitution requires," so that "it is the American people who will profit" (Complaint ¶¶ 13-14, 30)—thereby making Plaintiff and the American people the intended third-party beneficiaries of the Trust, and giving them a protectable property interest in President Trump's agreement under the Trust Agreement regarding the donation of those profits (Complaint ¶ 73).

(iv)  In addition to the control the Trustees exercise over the assets of the Trust, defendants Donald J. Trump, Jr., and Allen Weisselberg are the trustees of The Donald J. Trump Revocable Trust, and defendant Eric Trump is the Chairman of the Advisory Board of The Donald J. Trump Revocable Trust, which holds the assets of TTO not yet transferred to the

---

[3] The existence of the Trust also was confirmed after President Trump was inaugurated, by one of the lawyers for TTO, Alan Garten, on January 23, 2017 (Complaint ¶ 20).

Trust, including all of the "profits from foreign governments' patronage of [President Trump's] hotels and similar businesses" earned on those assets. Thus, the Trustees control all of those profits, whether held inside the Trust or inside The Donald J. Trump Revocable Trust (Complaint ¶¶ 22, 24, 30).

(v) The "Policy" disclosed on behalf of Defendants in response to the April 21, 2017 request of the U.S. House of Representatives Committee on Oversight and Government Reform regarding how Defendants intended to comply with President Trump's promise and agreement to donate to the U.S. Treasury "all profits from foreign governments' patronage of [President Trump's] hotels and similar businesses during his presidential term" fails to carry out President Trump's agreement because, among other reasons, it (a) too narrowly defines the sources of the profits, (b) lacks a mechanism to fully identify the profits, and (c) uses a formula that fails to account for all the profits (Complaint ¶¶ 33-35, 36-39, 40-45, 47)—thereby depriving the American people of the full value of their property interest and subjecting them to "potential violation[s] of the Emoluments Clause" that President Trump's promise and agreement was intended to avoid (Complaint ¶¶ 75-77). Incredibly, the Policy specifically states that no attempt would be made "to identify individual travelers who have not specifically identified themselves as being a representative of a foreign government entity on foreign government business," because it would be "impractical" and "would … diminish the guest experience of our brand" (Complaint ¶¶ 38, 47(i)).

Plaintiff's allegations are inextricably linked to the Trust. Furthermore, Plaintiff's specific allegation that Plaintiff and the American people are the intended third-party beneficiaries of President Trump's charitable promise to donate to the U.S. Treasury "all profits from foreign governments' patronage of [President Trump's] hotels and similar businesses

during his presidential term" is confirmed by President Trump's principal attorney involved in

the creation of the Trust (Complaint ¶¶ 9-10, 13-14), and is uncontradicted by any documentary

evidence, such as the Trust Agreement—even though President Trump admitted in his brief in

the related *CREW* case that "[i]n determining whether a plaintiff has stated a claim, the Court

may consider 'documents appended to the complaint or incorporated in the complaint by

reference[.]'"[4]

In their briefs, Defendants seem unable to recognize that that Plaintiff's Complaint is

asserting *equitable* causes of action to be adjudicated by the Court's equitable judicial Power

under Article III. Instead, Defendants try to characterize Plaintiff's claims as arising under some

sort of allegedly inscrutable contract theory (Trump Br. 8; Trustees Br. 2, 5-6). Defendants, at

best, are engaging in avoidance. As the Supreme Court aptly observed regarding similar

contentions in *Brown v. Fletcher,* 235 U.S. 589, 598-99 (1915):

> [T]this is not a suit for a breach of a contract. For whatever may have been the
> earlier view of the subject (Holmes Common Law, 407, 409) the modern cases do
> not treat the relation between Trustee and *cestui que trust* as contractual. The
> rights of the beneficiary here depended … upon the terms of the … trust and the
> duty which the law imposed upon the Trustee because of his fiduciary position.
> And a proceeding by the beneficiary or his assignee for the enforcement of rights
> in and to the property, held — not in opposition to but — for the benefit of the
> beneficiary, could not be treated as a suit on a contract, or as a suit for the
> recovery of the contents of a chose in action, or as a suit on a chose in action.

Similarly, Plaintiff seeks to impose an *equitable* constructive trust on the profits because

the "profits belong in good conscience to the People, and can clearly be traced to particular funds

held in the Trust and/or under the possession, custody and control of the Trustees" (Complaint ¶

79). It is well-established that this is a claim in equity, not for breach of contract. *See Great-West*

*Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213-14 (2002).

---

[4] *See Citizens for Responsibility and Ethics in Washington v. Donald J. Trump, in his official capacity as President
of the United States of America,* No. 17-cv-458-GBD (S.D.N.Y.) ("*CREW*"), Dkt. No. 35, at 5 n.5 (citations
omitted).

President Trump's denial (Trump Br. 7-8) that Plaintiff's claim for an accounting is an equitable cause of action is also meritless. Plaintiff alleges (Complaint ¶ 79) that "[t]he extraordinarily complex nature of the business holdings of TTO requires the exercise of the equitable judicial Power of this Court to unravel the sources and amounts of 'all profits from foreign governments' patronage of [President Trump's] hotels and similar businesses during his presidential term'" that should be held in the constructive trust until paid to the U.S. Treasury. As made clear by the Supreme Court 130 years ago, in *Kirby v. Lake Shore & Mich. S. R.R.*, 120 U.S. 130, 134 (1887):

> The case made by the plaintiff is clearly one of which a court of equity may take cognizance. The complicated nature of the accounts between the parties constitutes itself a sufficient ground for going into equity. … 1 Story Eq. Juris. § 451. Justice could not be done except by employing the methods of investigation peculiar to courts of equity.

*See also Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 478 (1962) (approving use of appointment of master under Fed. R. Civ. P. 53 where accounts "are of such a 'complicated nature' that only a court of equity can satisfactorily unravel them") (quoting *Kirby*); Complaint ¶ 81 (seeking appointment of master under Rule 53 to perform accounting).

Plaintiff has standing to assert his equitable claims, and the Court has jurisdiction over his claims, because he is asserting an imminent or actual injury to a *private right based on a property interest* in the Trust created "to avoid even the appearance of a" potential violation of the Foreign Emoluments Clause—a claim that involves a substantial question of federal law under the Constitution (Complaint ¶ 4(a)). Furthermore, even though the private property interest of each individual member of the putative class, *viz.,* the People of the United States, is small, Congress expressly directed that the claims of the class be aggregated when it vested federal jurisdiction in this Court under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)

("CAFA")—an alternative jurisdictional basis asserted by Plaintiff but totally ignored by Defendants' motions (Complaint ¶ 4(b)). And Plaintiff clearly has stated equitable causes of action for the imposition of a constructive trust and an accounting, along with the concomitant equitable claim for an injunction requiring the Trustees to pay all properly accounted for monies held in the constructive trust to the U.S. Treasury in a timely fashion—as well as the related declaratory judgments he seeks.

Defendants' motions should be denied.

## II.   PLAINTIFF HAS STANDING TO ASSERT HIS EQUITABLE CLAIMS, AND THE COURT HAS JURISDICTION OVER THOSE CLAIMS

### A.   Plaintiff Satisfies The *Spokeo* Requirements For Standing, And The Other Cases Cited By Defendants Are Inapplicable

The three part standing test articulated in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)—and the host of cases on which *Spokeo* relies—is straightforward: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *See also* Trump Br. 4 (quoting *Spokeo*).

Other than reciting the third *Spokeo* requirement, Defendants don't challenge it—clearly the constructive trust, appointment of a master and accounting, and an injunction requiring the Trustees to timely remit all of the foreign government profits to the U.S. Treasury would be redressed by a favorable judicial decision.

President Trump (Trump Br. 4-5) (piggybacked by the Trustees (Trustees Br. 4)), focuses on Plaintiff's failure to allege an injury in fact. As stated in *Spokeo,* "[t]o establish injury in fact, a plaintiff must show that he or she has suffered an invasion of a legally protected interest that is

concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id*. at 1548 (quotations and citations omitted). *See also* Trump. Br. 4 (quoting *Spokeo*).

Plaintiff has alleged, based on the facts described in Section I, above, that he and the American people are the intended third-party beneficiaries of the Trust, giving them each individually and all collectively a protectable property interest in President Trump's agreement memorialized in the Trust Agreement to donate to the U.S. Treasury "all profits from foreign governments' patronage of [President Trump's] hotels and similar businesses during his presidential term" (e.g., Complaint ¶ 73). Defendants don't dispute the existence of this property interest or the status of Plaintiff and the American people as the intended third-party beneficiaries of the Trust under the terms of the Trust Agreement.

Though the reach of the Trust is concededly extremely broad—indeed unprecedented— and the case law is limited, the property interest held by each American is a private right enforceable in equity, and sufficient to accord Article III standing. *See Zavolta v. Lord, Abbett & Co., LLC,* No. 2:08-cv-4546, 2010 WL 686546, at *5 (D.N.J. Feb. 24, 2010) ("Generally all authorities agree that trust beneficiaries have a property right in the trust res. … As a matter of first impression it appears that such an interest is sufficient to confer Article III standing."). And, as Justice Thomas notes in his concurrence in *Spokeo,* injury has traditionally been *presumed* in a matter involving the invasion of a private legal right, including a "property right." 136 S. Ct. at 1551 ("when one man placed his foot on another's property, the property owner needed to show nothing more to establish a traditional case or controversy").

Furthermore, Plaintiff has alleged an injury that is actual and imminent—ongoing in fact. The "Policy" provided on behalf of Defendants to the Committee on Oversight and Government Reform confirms on its face that the Trustees are falling far short of their fiduciary duties to

comply with President Trump's promise and agreement in multiple respects, including their decision to protect the Trump brand over compliance with the payment of the profits to the U.S. Treasury required under the Trust Agreement, because paying over the complete profits would be "impractical" (Complaint ¶¶ 33-35, 36-39, 40-45, 47).

The cases and arguments made by President Trump against the existence of standing are inapposite. Plaintiff's "legally protected interest" is in the Trust *res,* and not in the revenues of the Treasury generally as a taxpayer or how they are spent. *Cf. Hein v. Freedom From Religion Found., Inc.,* 551 U.S. 587, 600 (2007) (an interest *of a taxpayer* over the "moneys of the federal treasury" is "too indeterminable, remote, uncertain and indirect to furnish a basis for an appeal to the preventive powers of the Court *over their manner of expenditure*") (emphasis added). Nor, for the same reason, is Plaintiff asserting "the generalized interest of all citizens in constitutional government"—as were the Respondents in *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 212, 217 (1974), who were pursuing a claim regarding the proper application to members of Congress of the Ineligibility Clause, Article I, Section 6, Clause 2. And, importantly, unlike *Schlesinger,* Plaintiff's claims do not implicate a confrontation between the Court and a coordinate branch of the Government, *cf. id.,* at 222, because the creation of the Trust "to avoid even the appearance of a" potential violation of the Foreign Emoluments Clause obviates the need for any specific Congressional action otherwise required under the Foreign Emoluments Clause in connection with the foreign government profits (Complaint ¶ 15)—further confirming the *private right* nature of those claims under the Trust.

Finally, the Trustees also cursorily argue that Plaintiff's injury is not "fairly traceable to any challenged conduct *of Defendants* [i.e., the Trustees], who have been sued only as purported trustees of an unidentified trust" (Trustees Br. 4) (emphasis in original). However, there is nothing "purported" about it—the Trustees have been specifically identified as the trustees of the Trust

9

(Complaint ¶ 11, White Paper 2-3), and they have specifically been identified in the trust documents of The Donald J. Trump Revocable Trust as the Trustees and Chairman of its Advisory Board, and thus have control over the foreign government profits in those trusts that are required to be paid to the U.S. Treasury (Complaint ¶¶ 22, 24, 30). The fact that the Trust is "unidentified" or "not publicly named" is irrelevant. Sheri Dillon and a team of highly reputable lawyers from Morgan Lewis & Bockius ("MLB") have stated on behalf of Defendants in the White Paper that the Trust exists (at 2-3).[5] And one of the lawyers for TTO, Alan Garten, also confirmed that the Trust had been set up (Complaint ¶ 20). Because the Trust exists, the Trustees owe a fiduciary duty to Plaintiff and the other beneficiaries of the Trust to account for and pay all of the foreign government profits under the Trust's terms—including the profits attributable to properties still held by TTO in The Donald J. Trump Revocable Trust over which they also exercise control.

This case and the underlying facts are exceptional, extraordinary and unprecedented, it's true. But the relevant, long-standing equitable principles are not, and their application to these facts fully supports Plaintiff's standing to pursue his equitable claims.

**B.      The Court Has Jurisdiction Over Plaintiff's Claims**

In his brief, President Trump makes passing reference to the absence of an Article III, Clause 2, "case or controversy," based on the assertion that "Plaintiff has not alleged any statutory or constitutional violation by the President" (Trump Br. 2, 7-8). The jurisdictional challenge by the Trustees is limited to the "injury in fact" standing issue already addressed above (Trustees Br. 3-4). Neither brief addresses Plaintiff's additional basis for jurisdiction under CAFA, 28 U.S.C. § 1332(d).

---

[5] In addition to Ms. Dillon, a highly regarded tax lawyer with substantial experience in complex tax-related business structuring—including the Trust—the other MLB lawyers authoring the White Paper include Fred F. Fielding, who served as White House counsel to Presidents George W. Bush and Ronald Reagan and also served in the Nixon White House as deputy counsel and associate counsel, and Allyson N. Ho, a well-known and experienced Supreme Court advocate. *See* White Paper at 1 n.1.

Plaintiff's allegation of federal jurisdiction under 28 U.S.C. § 1331 (Complaint ¶ 4(a)) states: "The Article III judicial Power is jurisdictionally vested in this Court under 28 U.S.C. § 1331, because the action arises under the Constitution and/or involves a substantial question of federal law under the Constitution." Contrary to President's Trump's argument, it is not necessary for Plaintiff to specifically allege that President Trump has violated a statute or the Constitution for this Court to exercise jurisdiction over him, so long as Plaintiff's claims regarding President Trump "involve a substantial question of federal law"—here under the Constitution. *Cf. Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 312 (2005) ("There is, however, another longstanding, if less frequently encountered, variety of federal "arising under" jurisdiction, this Court having recognized for nearly 100 years that in certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues.").

This case does not involve a state-law claim implicating a significant federal issue, it involves a comparable *federal equitable claim* implicating a significant federal issue. *Cf. Kirby, supra*, 120 U.S. at 134 ("The case made by the plaintiff is clearly one of which a court of equity may take cognizance."). Additionally, in this case, there is no statutory or constitutional violation by President Trump to allege because one of the primary purposes of the creation of the Trust was "to avoid even the appearance of a" potential violation of the Foreign Emoluments Clause by President Trump in his official capacity as President of the United States. Nevertheless, because President Trump is the owner of the assets of the Trust under federal law (Complaint ¶¶ 18, 25), the failure by the Trustees to remit all of the foreign government profits earned by those assets *implicates* potential violations of the Foreign Emoluments Clause by President Trump, a significant federal issue—indeed, *the* issue in *CREW,* to which President Trump refers the Court

11

as part of his "failure to state a claim" arguments in this case (Trump Br. 9). This inextricable linkage between Plaintiff's equitable claims and the Foreign Emoluments Clause satisfies the "arising under" and "case or controversy" requirements of Article III, Section 2, Clause 1.

Additionally, Plaintiff's allegations satisfy the "controversy" "between citizens of different states" requirements under CAFA (Complaint ¶ 4(b)). Although CAFA is traditionally viewed as a diversity jurisdiction statute for state-law claims, its principal focus is on the *scope* of, rather than the substantive law governing, the class action allegations, and nothing in CAFA precludes the assertion of jurisdiction based on a federal claim that otherwise satisfies the statutory class action requirements. And there is no dispute by Defendants (or otherwise) that the class in this case is numerous (hundreds of millions of members) and geographically dispersed nationwide, and that the amount in controversy as set out in the Complaint equals or exceeds $5,000,000 (Complaint ¶ 4(b)). Thus, jurisdiction properly lies under CAFA against both President Trump, for the reasons stated above, and the Trustees, who undisputedly are empowered with the control over the foreign government profits at issue in the case.

## III.   PRESIDENT TRUMP'S SOVEREIGN IMMUNITY ARGUMENT IS MERITLESS

President Trump's sovereign immunity argument (Trump Br. 6-7) is based on a misreading or mischaracterization of Plaintiff's claims, and should be rejected.

Contrary to President's Trump's argument, Plaintiff is not "citing" the Declaratory Judgment Act, 28 U.S.C. § 2201-2202, "as a basis for his claim"—although he is surely seeking a "corresponding" declaration under each of his claims for relief, based on his assertion of entitlement to the equitable remedies identified in each of those claims (Complaint ¶¶ 71-77 at ¶¶ 76-77; ¶¶ 78-81 at ¶¶ 80-81; ¶¶82-84 at ¶ 84).

Nor, contrary to President Trump's argument (Trump Br. 6), is Plaintiff seeking to require President Trump to comply with the Miscellaneous Receipts Act, 31 U.S.C. § 3302 ("MRA"). Plaintiff's allegations under the MRA do not assert a private right of action against any of the Defendants, but are asserted to buttress the need for the imposition of the constructive trust, the accounting by the appointed master, and the injunction requiring the Trustees to *timely* remit the foreign government profits, not next year (Complaint ¶¶ 57-62).

Additionally, contrary to President Trump's argument, nowhere does Plaintiff allege that President Trump is exercising his authority unconstitutionally, though as discussed in Argument II.B, above, the Trustees' failure to remit all of the foreign government profits does create a potential violation of the Foreign Emoluments Clause in light of President Trump's status as "owner" of all of the assets of the Trust and The Donald J. Trump Revocable Trust—including the foreign government profits required to be paid to the U.S. Treasury. But President Trump's promise and agreement, as memorialized in the Trust Agreement, obviates the need for the Court to decide that difficult question in connection with Plaintiff's equitable claims.

Finally, President Trump wholly mischaracterizes Plaintiff's Complaint when he states, with citation to Complaint ¶ 42, that "Plaintiff is seeking an order requiring the President to donate more foreign government-derived profits to the United States Treasury than may be planned by The Trump Organization." Simply stated, nothing in Complaint ¶ 42 or anywhere else in the Complaint, seeks such an order against President Trump.

## IV.   THE MRA APPLIES TO THE TRUSTEES, AND CONFIRMS THE NEED FOR THE IMPOSITION OF THE EQUITABLE RELIEF SOUGHT BY PLAINTIFF

The MRA, 31 U.S.C. § 3302, is quoted in relevant (and substantial) part in Complaint ¶ 58. Among other things, it requires in § 3302(c)(1) that a "person having custody or possession of public money" "shall deposit the money without delay in the Treasury or with a depositary

designated by the Secretary of the Treasury under law." The same section actually imposes a

three day requirement for the deposit of the public money. At the outset, and as noted in

Argument III, above, Plaintiff is not seeking to require President Trump to comply with the

MRA—Plaintiff's allegations under the MRA do not assert a private right of action against any

of the Defendants, but are asserted to buttress the need for the imposition of the constructive

trust, the accounting by the appointed master, and the injunction requiring *the Trustees to timely*

*remit* the foreign government profits (Complaint ¶¶ 57-62).

Based on what he describes as Plaintiff's "theory that the donation policy announced by

[TTO] allegedly does not comply with the timing requirement of the [MRA]," President Trump

disputes altogether the applicability of the MRA to the foreign government monies required to be

paid to the U.S. Treasury—arguing they are not "public money" (Trump Br. 8). The Trustees

piggy-back that argument, and also contend that the MRA doesn't apply to them at all, only to

officials and agents of the U.S. Government, which the Trustees are not (Trustees Br. 6).

Defendants are wrong. "Public money" under the MRA "applies to monies *bound for the*

*federal treasury*"—which the foreign government profits undisputedly are. *Thomas v. Network*

*Solutions, Inc.* 176 F.3d 500, 511 (D.C. Cir. 1999) (emphasis added).[6] The cases cited by

President Trump (Trump Br. 8) actually confirm this. *Coudert v. United States,* 175 U.S. 178,

182 (1899), states that "the public moneys of the United States are the revenues of the United

States from *all sources*" (emphasis added)—in *Coudert* referring to the public moneys received

by government "officers." And the decision in *Am. Fed'n of Gov't Emps., AFL-CIO, Local 1647*

*v. Fed. Labor Relations Auth.*, 388 F.3d 405, 408–09 (3d Cir. 2004), makes it even clearer:

> [P]ublic money is defined broadly. As Justice Story observed in his
> Commentaries, it includes "all the taxes raised from the people, as well as

---

[6] It is undisputed that the foreign government profits under the Policy are payable to the U.S. Treasury, the issue is how much and when (Complaint ¶¶ 31, 32, 36-37).

revenues arising from other sources." 2 Joseph Story, *Commentaries on the Constitution of the United States* § 1348 (3d ed. 1858), *quoted in Office of Pers. Mgmt. v. Richmond,* 496 U.S. 414, 427[] (1990). *By law, public money includes money from any source* such as taxes, customs and user fees, and other proceeds of government agency activities. *See* 31 U.S.C. § 3302 (Miscellaneous Receipts Act) (emphasis added).

Furthermore, § 3302(c)(1) applies to "a person"—which includes the Trustees—as opposed to an "official or agent of the United States Government," to which every other section of the Act applies. *See, e.g., Pub. Interest Research Group of N.J., Inc. v. Powell Duffryn Terminals, Inc.,* 913 F.2d 64, 81-82 (3d Cir. 1990) (MRA applies to penalties required to be paid by private defendants to the Treasury). Basic statutory construction supports the same conclusion—the use of the term "person" rather than "official or agent of the Government" by Congress in MRA § 3302(c)(1) applies to the Trustees, who are "persons."

## V.    PLAINTIFF'S COMPLAINT READILY SURVIVES DEFENDANTS' MOTIONS TO DISMISS UNDER RULE 12(b)(6)

The standard regarding Defendants' motions to dismiss are well-established: "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Additionally, Plaintiff's allegations must "raise a right to relief above a speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Every one of Plaintiff's factual allegations is supported by documentary evidence and/or applicable legal authorities. President Trump doesn't even dispute this, instead offering a series of legal defenses in support of his motion (Trump Br. 7-9). The Trustees piggy-back yet again on President Trump's brief, but also employ an "empty kitchen-sink approach" by describing Plaintiff's Complaint as "utterly vague" and "lack[ing] any substantive cognizable theory" (Trustees Br. 5-6 at 5)—an argument that itself is "utterly vague" and "lack[ing] any substantive

15

cognizable theory." Plaintiff's well-plead facts and applicable *equitable law* summarized and fully supported by the Complaint citations in Plaintiff's Preliminary Statement and Summary of Relevant Facts, Section I, above, belie the Trustees' bald assertion.

All Defendants argue that Plaintiff has failed to state a claim for breach of contract (Trump Br. 8; Trustees Br. 5-6), an argument fully disposed of in Section I, above, because Plaintiff's claims lie in equity and the law of trusts, not contract. *See, e.g., Brown v. Fletcher,* 235 U.S. at 598-99. Defendants all raise an argument under the MRA (Trump Br. 8; Trustees Br. 6), but that is fully dispelled in Section IV, above. President Trump raises some additional arguments that need only be briefly addressed.

President Trump's argument that Plaintiff doesn't allege any constitutional or statutory violation by him (Trump Br. 7) is addressed in Sections II.B and III, above. And Plaintiff need not litigate the issue or establish that President Trump's conduct actually violates the Foreign Emoluments Clause (Trump Br. 9), where his retained ownership of the foreign government profits because of the Trustees' failure to pay those monies to the U.S. Treasury violates the Trust Agreement and the rights of Plaintiff and the American people as beneficiaries of the Trust by eliminating the protections accorded to them under the express purpose of the Trust "to avoid even the appearance of a" potential violation of the Foreign Emoluments Clause, as well as depriving them of the benefits of their property interest in the payments required to be made to the U.S. Treasury.

President Trump's contention that "[t]he complaint's three counts only seek remedies, which are not causes of actions" (Trump Br. 7-8) simply ignores all of Plaintiff's Trust, Trust Agreement, and beneficiary-property interest allegations, as well as Plaintiff's allegations regarding how the Policy fails to comply with their property interests in the Trust's foreign

government profits (Complaint ¶¶ 33-35, 36-39, 40-45, 47)—a breach of the fiduciary duties owed by the Trustees to the beneficiaries. *See Brown v. Fletcher, supra; Great-West Life,* 534 U.S. at 213-14 (equitable right to imposition of constructive trust in connection with beneficial property interest); *Kirby, supra* (equitable right to accounting). And President Trump's reliance on *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010), is misplaced. As Judge McMahon made clear, injunctive and declaratory relief *are* appropriate when the plaintiff establishes a "viable" claim." *Id.* at 406-07 (plaintiff pleading "viable" claim under New York General Business Law § 349 is entitled to pursue declaratory judgment and injunction).

Finally, President Trump argues that "the requested relief to remedy any … Emoluments Clause violation—*i.e.*, the creation of an equitable constructive trust to be administered by a special master—would also be barred by *Mississippi v. Johnson*, 71 U.S. 475, 500–01 (1866)" (Trump Br. 9, referencing Dkt. No. 35 at 48-50). There are two quick responses to the argument. First, Plaintiff is not seeking to remedy any Emoluments Clause violation—his claim seeks to ensure compliance with the Trust Agreement, with its principal purpose being *to eliminate any such possible violation* and "to do more than what the Constitution requires," so that "it is the American people who will profit" (e.g., Complaint ¶¶ 11, 13, 14). Second, nowhere in his Complaint does Plaintiff seek injunctive relief against President Trump, only against the Trustees, so *Mississippi v. Johnson* is inapplicable.

Plaintiff's claims clearly withstand Defendants' motions under Rule 12(b)(6).

## VI.   CONCLUSION

The Trust exists, and Plaintiff and the American people are the intended third-party beneficiaries of the Trust with a property interest protectable in equity. The foreign government profits are held in the Trust and The Donald J. Trump Revocable Trust, over both of which the Trustees exercise the control necessary to ensure that the payment of the foreign government

profits is made to the U.S. Treasury. The Policy implemented on behalf of President Trump and the Trustees is concededly designed to avoid the full payment of the foreign government profits to the U.S. Treasury on a timely basis, creating the possibility—intended to be avoided by the creation of the Trust—that President Trump, the owner of those profits, is violating the Foreign Emoluments Clause. And the equitable claims asserted by Plaintiff—for the imposition of a constructive trust over the foreign government profits, an accounting for those profits by a master appointed under Fed. R. Civ. P. 53, and injunctive relief requiring the Trustees to implement satisfactory procedures to identify all of the profits and pay the profits as determined by the accounting to the U.S. Treasury on a timely basis—fit precisely within the scope of the Court's equitable judicial Power intended by the Framers under Article III, Section 2, of the Constitution.

This case is exceptional, extraordinary and unprecedented. But Plaintiff has standing to assert his equitable claims, and the claims are not subject to dismissal. Defendants' motions to dismiss under Rules 12(b)(1) and 12(b)(6) should be denied by the Court.

Dated: September 1, 2017

Respectfully submitted,

s/ William R. Weinstein
LAW OFFICES OF WILLIAM R. WEINSTEIN
199 Main Street, 4th Floor
White Plains, New York 10601
(914) 997-2205
wrw@wweinsteinlaw.com

PLAINTIFF PRO SE AND ATTORNEY
FOR THE PEOPLE OF THE UNITED
STATES OF AMERICA